Donahue, J.
It is difficult for this court to determine just what importance should be attached to the averments of the cross-petition that William Hennessey was a member of The Miami County Benefit Association, a corporation of Miami county, and that at and about the time he undertook to assign this policy issued by The Ohio Burial Insurance Company to E. S. Robbins he was about to withdraw from this benefit associa *189 tion, and that the contract of assignment provided that Robbins should furnish the benefits specified in Policy No. 4251 issued by The Miami 'County Beneñt Association.
Counsel inform us in their briefs that prior to April 9, 1908, there was in this state a form of mutual benefit corporation known as burial associations. The purpose of these associations was to provide at their death a funeral and proper burial for the members, and these associations were organized on the mutual benefit plan, the members contributing a stipulated sum weekly, in consideration of which the association contracted to give on a particular member’s death a proper funeral with certain stipulated funeral furnishings and outfit, which were to be furnished by and through a designated undertaker known as the association undertaker or official undertaker, and we take it that Policy No. 4251, issued by The Miami County Benefit Association, and referred to in the contract of assignment of the policy herein sued upon, was in the nature of these contracts. On April 9, 1908, the legislature of this state passed an act entitled: “An act to amend Section 289 of the Revised Statutes of Ohio, making it unlawful to engage in the insurance business in Ohio unless the same is expressly authorized by the laws of this state.” This act reads as follows:
“Sec. 289. The provisions of this chapter shall apply to individuals and parties, and to all companies and associations, whether incorporated or not, now or hereafter engaged in the business of insurance; and it is unlawful for any company, corporation or association, whether organized in *190 this state or elsewhere, either directly or indirectly, to engage in the business of insurance, or to enter into any contracts substantially amounting to insurance, or in any manner to aid therein, in this state, or to engage in the business of guaranteeing against liability, loss or damage, or for any company, corporation or association, engaged in the business of providing for the payment of the funeral, burial or other expenses of deceased members or certificate holders therein, or engagéd in the business of providing any other kind of insurance, to contract to pay or to pay the same, or its benefits or any part of either, to any official undertaker, or to any designated undertaker or undertaking concern, or to any particular tradesman or business man, so as to deprive the representative or family of the deceased from, or in any way to control them, in procuring and purchasing said supplies and services in the open market with the advantage of competition, unless the same is expressly authorized by the statutes of this state, and such statutes and all laws regulating the same and applicable thereto have been complied with, provided that nothing in this chapter nor in any other statute of the state of Ohio, pertaining to insurance shall so operate or be construed as to apply to the establishment and maintenance by individuals, associations or corporations, of sanitoriums or hospitals for the reception and care of patients for the medical, surgical or hygienic treatment of any and all diseases, or for the instruction of nurses in the care and treatment of diseases and in hygiene, or for any and all said purposes, nor to the furnishing of any and all of said services, care *191 or instruction in or in connection with any such institution under or by virtue of any contract made for such purposes,- with residents of the county in which such sanitorium or hospital is located.”
Whatever may have been the abuses against which the provisions of this act were directed, it clearly appears from the act itself that the general assembly of Ohio considered these contracts to be in restraint of trade, and therefore against public policy, and sought to prevent the making of all such contracts, except as they might be expressly authorized by statute.
It is averred in this cross-petition that at the time the policy in suit was issued to William Hennessey that “Hennessey was a member of The Miami County Benefit Association, a corporation •of Miami county, and was entitled to receive from said association in case of the death of Mary Hennessey certain funeral and funeral outfit and furnishings for the use and benefit of Mary Hennessey.” There is no averment as to the time that William Hennessey became a member of The Miami County Benefit Association. The averment is that he was,' at the time this policy in suit was issued to him, to-wit, March 9, 1909, a member, and that he was then and there entitled as such member to certain funeral and funeral outfit and furnishings for the use and benefit of Mary Hennessey. E. S. Robbins did not agree to furnish to William Hennessey anything of value in addition to what he was then entitled to receive under Policy No. 4251, issued by The Miami County Benefit Association* From the averments of this cross-petition it is difficult to get a correct *192 notion of the real relation of the parties to each other, or the motives that induced William Hennessey to assign to E. S. Robbins a policy of insurance for a sum certain on the life of his wife, Mary Hennessey, for no other or further consideration except that which he was then entitled to receive from an entirely different and distinct corporation, to-wit, The Miami County Benefit Association. So far as the averments of this cross-petition are concerned this contract of assignment of this policy is without any consideration whatever moving to William Hennessey, nor does it disclose a loss on the part of the promisee. Section 289, Revised Statutes, as amended April 9, 1908, absolutely prohibited this association from designating in its contract, or policy, E. S. Robbins, or any one else to "perform for it, and on its part, the covenants and agreements by it to be performed. If it could not do this directly, it follows that it could not evade the terms of the statute by any subterfuge so as to accomplish indirectly the very thing that the statute was designed to prevent. This court cannot travel outside the pleadings ox speculate upon what may or may not have been the purpose of this arrangement. As the pleading stands, William Hennessey was entitled to receive from The Miami County Benefit Association all these things that Robbins undertook to furnish, and it is not important whether The Miami County Benefit Association undertook to pay Robbins directly therefor, or for the purpose of evading the statute called to its aid this defendant company to reimburse or compensate Robbins for the performance of its part *193 of its contract with William Hennessey. In either event the cross-petitioner must fail.
If this defendant company sustained any relation whatever to The Miami County Benefit Association, by which it undertook to do for this asso'ciation that which it could not do for itself, then it is a clear attempt to evade the statute, and comes within the .meaning and intention of the prohibition thereof.
If, on the other hand, it be conceded that notwithstanding the averments of this cross-petition that The Miami County Benefit Association has nothing to do with this case, that all that part of the cross-petition in reference to that association and the rights and benefits accruing to William Hennessey by reason of his certificate of membership therein is mere surplusage, and that this cause must be determined the same- as if there had been no such organization as The Miami County Benefit Association, or William Hennessey was never a member thereof, the result must necessarily be the same. While Section 289, as amended, was undoubtedly intended to correct abuses that had flourished under existing burial associations that designated directly in their contracts the undertaker or undertaking concern that should furnish the funeral and funeral outfit for the insured, yet in doing this the legislature sought to make certain that the objects of the statute should not be defeated by any subterfuge or evasion. The statute provides not only that companies and corporations or associations engaged in the business of providing for the payment of funeral, burial or other expenses of deceased members, or *194 certificate holders therein, should not contract to pay, but also that they should not pay the same to any official undertaker, or to any designated undertaker or undertaking concern, or to any particular tradesman or business man. It is further provided that the same restrictions and limitations of contract should apply to all insurance companies writing any other kind of insurance. If this provision of the statute is to obtain, then The Ohio Burial Insurance Company comes as fully within the purview of this section as The Miami County Benefit Association, notwithstanding that the policy issued by the former company provides for the payment of a sum certain upon the death of the insured. This statute prohibits not only a contract on the part of an insurance company to pay, but it also provides that such company “shall not pay the same or its benefits or any part of either to any official undertaker, or to any designated undertaker or undertaking concern.” Any attempted assignment of this policy to any person or company included in the prohibited classes is in direct violation, not only of the letter, but the spirit of the law, and such attempted assignment cannot confer a legal right upon an assignee coming within either of the prohibited classes, to compel payment, nor can such assignment relieve the insurance company from the positive terms of the statute and authorize it to pay the benefits secured by the policy to any one to whom such payment would be otherwise unlawful. In other words, the law is supreme, and no contract between individuals can make it lawful to do that which the statute positively commands *195 shall not be done. This attempted assignment is in direct violation of the terms of the statute, and purports to authorize the insurance company to pay the benefits of this policy to a designated undertaker, the very thing that the statute says shall not be done. So that if this statute is constitutional it is the end of the case.
It is not contended that the statute is unconstitutional in so far’ as it relates to the insurance company. It seems to be conceded, and certainly it is the law, that the insurance company having been granted the right and the franchise of writing contracts of insurance in this state, is subject to the control of the state, not only as to the nature of the business it may do, but also as to the form of contract it may make. In other words, it cannot avail itself of the benefits of this legislation and challenge the constitutionality of the statute as to its. burdens. The real contention on the part of the plaintiff in error is, that this statute, if it does prevent the assignment of this policy of insurance after the same has been issued, to anyone to whom the insured or the beneficiary desires to assign the same, that in that respect it is an unreasonable interference with the right of private contract, and, therefore, unconstitutional. It would be sufficient perhaps to say in answer to this contention that if the statute is constitutional in so far as it seeks to control and regulate insurance companies, that it is also a constitutional enactment with reference to those who deal with the company with knowledge of the law, and thereafter seek by private contract to defeat the provisions of the law. When William Hennessey secured this contract of in *196 surance from the defendant company he knew the limitations and the rights and powers of that company, the character of the contract it could write and the persons to whom it could make payment of the benefits, and he took under this policy just such rights and benefits as the insurance company could grant to him and no more. It was his privilege to accept or reject that contract. He voluntarily accepted it and his payments of premium were made with the knowledge of the limitations of his rights thereunder. If such rights and benefits were limited, it is proper to presume that the premihm was fixed with reference to such limitations. After securing the contract he sought to enlarge his rights' under the same by assigning it .to an individual of a prohibited class. The individual accepting the assignment knew that he was prohibited by the statute from receiving payment of the benefits of that policy. Now, seemingly forgetful of the fact that when William Hennessey received the policy of insurance it had impressed upon its terms by the force and effect of the language of this statute these limitations as .to who might rightfully claim payment thereunder, it is insisted that this policy holder and this assignee have such natural right of private contract that by such contract they can enlarge the operation of the policy of insurance, and thereby set at naught the prohibitions of the statute under which the contract of insurance was issued and accepted. This statute was a part of the contract just as much as if it had been written into the same, and by accepting it William Hennessey became bound by the terms of the statute equally *197 with the insurance company. It follows, therefore, that the statute does not interfere with the right of private contract, but leaves to William Hennessey every right, privilege and authority to deal with this policy of insurance according to the terms and conditions of the policy itself, just as it was when it was handed to him by the insurance company. If there is any limitation on his right to assign the same, that limitation is in the original contract of insurance read in the light of the statute authorizing its issue, and having accepted it subject to such limitations, there is no theory upon which he can now claim further right or privilege than such contract purported to grant him under the terms and provisions of the law controlling the other contracting party. The right of the state to control the insurance business is so well settled that citations of authority are unnecessary. Insurance has grown to be an important factor in our business life, and of such vast proportion that it affects all classes of people and property, and, therefore, it can no longer be doubted but that it is the duty as well as the right of the state to protect not only the private citizen dealing in insurance, but also the companies, corporations or individuals engaged in the business of insurance along legitimate lines, otherwise in the very nature of things such abuses would arise as would destroy the benefits of the business to insurer and insured. Nor is it now important how the law originally regarded these contracts. The statutes of the state now require compliance with certain conditions designed for the security and protection of the public, and, therefore, the right *198 to transact this business is no longer a private right, but a franchise. This question was so fully-considered in the case of State, ex rel., v. Ackerman, 51 Ohio St., 163, that it would be a waste of time and space to review the subject further. In that case this court held that the right to carry on the business of insurance was a privilege or franchise and no longer a matter of natural right. The state is authorized to grant or withhold a franchise, and where it grants the same it has the right to impose terms and conditions that shall control in the exercise of the right so granted. The business transacted in the exercise of such franchise is subject to all the limitations, terms an I conditions imposed by the state, whether such provisions are written into the contract or not, and every individual purchasing insurance is as fully bound by these limitations, terms and conditions as the company issuing the policy. In other words, he can receive no further rights, no further privileges, no further immunities, no further benefits than the insurance company in the exercise of its franchise is authorized to grant.
The provisions and prohibitions of Section 289, Revised Statutes, as amended April 9, 1908, are constitutional and binding alike on insurer and insured. It is, therefore, unnecessary to consider any of the further questions raised in the briefs of defendants in error.
The judgment of the circuit court is affirmed.

Judgment affirmed.

Davis, C. J., Shauck, Johnson and O’Hara, JJ-, concur.